MASON *v.* RENN.

JAMES W. MASON v. CLAUDE A. RENN, WILLIAM P. CLEMENT AND
THOMAS W. ALLEN, JR., LOCAL REVIEW COMMITTEE.

(Filed 13 December, 1961.)

**1. Agriculture § 11—**
     The findings of fact by the Review Committee in proceedings for the
allotment of marketing quotas are conclusive on appeal when supported
by competent evidence, and in the absence of exceptions to the Committee's
findings, such findings will be presumed supported by competent evidence.
7 USCA, Section 1365.

**2. Appeal and Error § 21—**
     The absence of exceptions in the record does not preclude review since
the appeal itself will be considered an exception to the judgment, pre-
senting the face of the record for review for errors of law appearing
thereon.

**3. Agriculture § 11—**
     Where the owner of a farm sells a part thereof but fails to have the
crop allotments divided between the respective tracts for more than ten
years, and the records of the farm at the time of the sale have been des-
troyed in accordance with applicable regulations, and there are no re-
liable records or evidence upon which the facts and conditions existing at
the time of the sale may be determined, the County Committee, upon re-
quest of the purchaser for reconstitution, properly divides the allotments
on the basis of the conditions existing at the time of the sale. Code of
Federal Regulations, Section 719.7.

**4. Same—**
     The County Committee properly uses the cropland method in redetermin-
ing allotments instead of the contribution method when the request for re-
determination is made by the purchaser of a part of the farm more than
six years subsequent to the acquisition of the farm by the seller and there
is no evidence that the tract purchased had any allotments at the time
it was acquired by the seller.

**5. Same—**
     The ascertainment of the cropland acreage of the respective tracts by
the County Committee upon request by the purchaser of a part of the
farm for reconstitution of the crop allotments for the respective tracts,
*is held* not erroneous as a matter of law upon the present record.

APPEAL by plaintiff from *Hall, J.,* February Civil Term 1961 of
FRANKLIN.

This is an appeal from the judgment entered below affirming the
determination of a Review Committee consisting of the defendants
who were appointed by the Secretary of Agriculture pursuant to Sec-
tion 363 of the Agricultural Adjustment Act of 1938, as amended (52
Stat. 63; 7 U.S.C. 1363). This Committee was called upon to review

the 1960 tobacco, cotton and wheat farm marketing quotas for Franklin County farm No. 55-035-K2679, being the farm of James W. Mason (hereinafter referred to as farm K-2679).

Pending this appeal James W. Mason died, leaving a last will and testament, devising to Mrs. Tinie L. Mason the lands involved in this action. J. F. Mason qualified as administrator c.t.a. of the estate of James W. Mason. Both these parties have been made parties plaintiff in substitution for James W. Mason, deceased, pursuant to an order of the court, and will be referred to hereinafter as appellants.

The Review Committee heard the evidence, considered the exhibits filed in the case, found the facts, made its conclusions, and determined as follows:

### *"FINDINGS OF FACT*

"1. For an undetermined period prior to August 14, 1950, J. W. Mason was the owner-operator of a farm lying in Franklin, Wake, and Granville Counties, North Carolina, bearing Serial No. K-2679 and having allotments of tobacco, cotton, and wheat. On or about said date he granted by deed a portion of said farm to James G. Lye and wife. Neither party to this transaction gave proper notice thereof to the County ASC Committee until January 6, 1960, when James G. Lye filed a request for a redetermination of cropland on farm K-2679 and requested that the farm be divided.

"2. The cropland on farm K-2679 was measured by a representative of the County ASC Committee on February 5, 1960, on which date the tract of land owned by James G. Lye contained 59.5 acres of cropland, the portion of the farm retained by J. W. Mason contained 58.7 acres of cropland. The total cropland in the parent farm on such date was 118.2 acres.

"3. The Franklin County ASC Committee divided the tobacco, wheat, and cotton farm marketing quotas determined for the parent farm K-2679 betwen the tract of the farm owned by James G. Lye and the portion retained by J. W. Mason in the same proportion that the acreage of cropland in each tract, as determined in 1960, bore to the cropland determined for the parent farm for 1960.

"4. Because of the lack of reliable records and evidence a determination cannot be made as to the facts and conditions existing at the time Mason sold the land to Lye.

"5. There were other reconstitutions of the parent farm K-2679 during the period 1950-1960, but the Lye tract was not separated from the parent farm until 1960.

"a. On or about November 1950 James G. Lye and wife sold a part of their tract to one L. C. Lowery and the County Committee trans-

ferred an allotment to the said Lowery from the parent farm K-2679, carried on the records as operated by J. W. Mason.

"b. In a redetermination of cropland made for the parent farm in 1956, because of a sale of a portion of the farm by J. W. Mason to Durham YMCA and a resulting division of the farm marketing quotas, the cropland on the Lye tract was measured, at the direction of J. W. Mason, along with the other cropland in the farm. The Lye tract at that time contained 83.2 acres of cropland, all of which were credited to J. W. Mason with his knowledge.

"c. At the time he sold the tract to Lye, Mason owned several tracts of land in Wake and Franklin Counties, all of which were combined in one ASC contract, No. K-2679 in his name, in Franklin County. In 1958 the land covered by said contract located in Wake County and not covered by Franklin County photography was transferred from the Franklin County ASC Office to the Wake County ASC Office under contract No. 2679-A, with J. W. Mason as the owner and operator, and the remaining land covered by K-2679 continued under said contract No. as before.

"6. No allotment crops have been planted on the Lye tract since August 14, 1950.

"7. At the time of the sale by Mason to Lye, the tract involved therein did not have a separate flue-cured tobacco allotment nor any allotment of cotton or wheat, the said tract being a part of the parent farm No. K-2679.

## "CONCLUSIONS

"1. The Notice of Farm Acreage Allotment and Marketing Quota form placed the responsibility on the applicant to report any change in the ownership, operation, or the control of the farm for the years 1951 through 1959.

"2. The County Committee, in accordance with Section 719.8(a) (2) of the Farm Constitution and Allotment Record Regulations, properly used the cropland method in apportioning the farm marketing quotas for the parent farm between the tracts of land owned by J. W. Mason and James G. Lye.

"3. The County Committee established the allotment for farm K-2679 in accordance with the law and regulations.

## "DETERMINATION

"The flue-cured tobacco acreage allotment determined for the applicant's farm K-2679 is 5.41 acres. The application for the allotment of 10.90 is denied.

"The Review Committee carefully considered the proposed findings of fact and conclusions filed by applicant, and incorporated many of them in its findings but rejected all not specifically incorporated in the Committee's findings.

"The conclusions are rejected in toto.

"Done at Louisburg, North Carolina, this 21st day of June 1960."

It was stipulated by counsel for the respective parties "that the papers in the farm file folder for Farm No. K-2679, which form a part of the record in this cause as filed by the defendants, Review Committee, cover the years 1955, 1956, 1957, 1958 and 1959, and that such papers for the year 1954 and previous years have been destroyed by the local county committee in accordance with applicable regulations requiring such destruction."

It was agreed that the court below should hear this matter upon the records filed with the Clerk of the Superior Court of Franklin County without oral arguments of counsel but upon written briefs. The court, after examination and study of said records and briefs, being of the opinion and finding that the determination of the Review Committee is supported by substantial evidence and that the determination is in accordance with the law applicable thereto, thereupon affirmed the determination of the Review Committee.

To the judgment and the conclusions therein contained, the plaintiff J. W. Mason excepted and appealed to the Supreme Court, assigning error.

*W. M. Jolly and John F. Matthews for plaintiff.*

*William H. Orrick, Asst. United States Attorney General; Robert H. Cowen, United States Attorney; Irvin B. Tucker, Jr., Asst. United States Attorney; John G. Laughlin and John C. Eldridge, Attorneys, Department of Justice.*

DENNY, J.  This action was instituted and heard in the Superior Court of Franklin County, North Carolina, pursuant to the provisions of 7 U.S.C.A., Section 1365, of the Agricultural Adjustment Act.

Under the required procedure set forth in Section 1365 of the above Act, the Review Committee was required "to certify and file in the court a transcript of the record upon which the determination complained of was made, together with its findings of fact."

It is provided in 7 U.S.C.A., Section 1366: "The review by the court shall be limited to questions of law, and the findings of fact by the review committee, if supported by evidence, shall be conclusive." See *Burleson v. Francis,* 246 N.C. 619, 99 S.E. 2d 767; *Luke v. Review Committee,* 155 F. Supp. 719; *Lee v. DeBerry,* 219 S.C. 382, 65

S.E. 2d 775, where this provision of the law has been considered and applied.

In this connection, it is well to note that in the application for review of the evidence introduced before the Review Committee, the original plaintiff, James W. Mason, never took an exception to any of the Committee's findings of fact, conclusions of law or the determination. Therefore, the findings of fact by the Review Committee stand unchallenged and are presumed to be supported by competent evidence and are binding on appeal. *Goldsboro v. R.R.*, 246 N.C. 101, 97 S.E. 2d 486, and cited cases. Furthermore, neither of the two assignments of error set out in the record on appeal is supported by an exception. This, however, does not foreclose the right of the present appellants to have the court consider and determine the legal questions presented by the appeal itself. *Gibson v. Ins. Co.*, 232 N.C. 712, 62 S.E. 2d 320. An appeal itself is considered an exception to the judgment and any other matters appearing upon the face of the record. *Dixon v. Osborne*, 201 N.C. 489, 160 S.E. 579; *Russos v. Bailey*, 228 N.C. 783, 47 S.E. 2d 22.

The Code of Federal Regulations, Section 719.7, revised as of 1 January 1960, reads as follows: "(a) *Applicability.* Whenever the county committee determines that a farm should be reconstituted the farm allotments and farm history and soil bank base acreages shall be reviewed and reconstituted in accordance with the regulations in this part and related county office records shall be revised as necessary to properly reflect basic allotment data for each farm as reconstituted. To the extent practicable all reconstitutions shall be based on facts and conditions existing at the time the change requiring the reconstitution occurred rather than on facts and conditions existing at the time the actual reconstitution action is taken by the county committee."

Since it was stipulated by the parties that the records in the farm file for farm K-2679 for the year 1954 and previous years have been destroyed by the local County Committee in accordance with applicable regulations requiring such destruction, and in view of the finding in Finding of Fact No. 4, to the effect that because of the lack of reliable records and evidence a determination cannot be made as to the facts and conditions existing at the time Mason sold the land to Lye, we hold that the County Committee was authorized to make the allotments based on the conditions as they existed at the time James G. Lye filed a request on 6 January 1960 for a redetermination of the cropland on farm K-2679 and requested that the farm be divided.

The appellants insist and argue that the County Committee used the cropland method in redetermining the allotments when the contribution method should have been used. They further contend that in arriving at the cropland on the Lye tract of land, the County Committee included as "cropland," land devoted to pasture and production of hay in contravention of applicable regulations.

The contribution method and the cropland method are set out in the Code of Federal Regulations (Cumulative Supplement), Section 719.8 (a), as follows: "(1) *Contribution method.* If the farm to be divided is the result of a combination which became effective during the six-year period immediately prior to the current year, each tract which is identical to a tract which went into the combination and which is being separated from the parent farm in whole or in part shall share in the allotments and history acreages for the parent farm for the current year in the same proportion that each tract contributed to the allotments for the parent farm at the time of the combination * * *.

"(2) *Cropland method.* If the contribution rule is not applicable, the current year allotments and allotment crop history acreages determined for the parent farm, shall, except as otherwise provided under contribution and history methods, be apportioned among the tracts in the same proportion that the acreage of cropland * * * in each such tract bears to the cropland * * * for the parent farm * * *."

We do not understand that the appellants contend that the history method is applicable to this case; hence, we deem it unnecessary to set out the statutory provision with respect thereto which may be found in the Code of Federal Regulations (Cumulative Supplement), Section 719.8 (a) (3).

We concede that if James W. Mason had obtained the tract of land sold to James G. Lye within six years immediately prior to 1960 instead of during the year 1942, and if when the Lye tract was combined with the Mason land it had allotments of tobacco, corn, and wheat, which were combined with Mason's allotments, then it would have been incumbent on the County Committee to have used the contribution method and to have allotted to the Lye farm such allotments as that tract contributed to the Mason farm allotments at the time of the combination. However, there is no evidence or finding of fact to show what allotments the Lye farm contributed to the parent farm allotments in 1942, if any. There is evidence tending to show that no crop acreage was allotted to the Lye tract of land or that James G. Lye produced any allotment crops from 1950 through 1959. On the other hand, there is evidence tending to show that Mason and Lye recognized that the owner of the Lye tract was entitled to allotments,

for Lye consented for Mason to continue to use the allotments, whatever they were. Moreover, there is evidence tending to show that Mason continued to use all the acreage allotted to farm K-2679 prior to the division and reconstitution in 1960.

It is possible that the Lye tract of land at the time it was purchased by James W. Mason in 1942, made no substantial contribution to the Mason farm allotments. It is also possible that when Mason sold this 164-acre tract of land to James G. Lye in 1950 the farm had but little if any cropland thereon that would have entitled Lye to any substantial portion of the crop allotments allotted to Mason for the combined farms. Even so, by neglecting for a period of approximately ten years to request a division of the farms, and to have the crop acreage allotments determined for the respective farms, the division in 1960, based on cropland on the respective tracts of land at that time, may have resulted in the Lye tract of land having received a larger crop acreage allotment than it would have been entitled to in 1950. Be that as it may, in view of the stipulation of the parties and the findings of fact by the Review Committee, the appellants cannot complain unless there was error of law made by the County Committee including as cropland on the Lye tract of land, land not eligible to be included as cropland under the law and the Federal regulations pertaining thereto.

It is provided in the Code of Federal Regulations, Section 719.10, in pertinent part, as follows: "The definition of cropland requires certain factual determinations and provides latitude for county committee judgment with respect to several factors. * * * A land area which is not in an established rotation pattern recognized in the community or which was not tilled within the preceding five-year period shall be classified as noncropland. * * *

"(a) *Tilled land.* Cropland planted or devoted to a crop (other than a permanent vegetative cover) and from which a crop is harvested or on which tillage operations are carried out in a workmanlike manner during the summer growing season in preparation of the land for the seeding of a crop for harvest shall be considered as meeting the 'tilled' requirement for that year. * * *

"(b) *Rotation.* This factor, perhaps more than any other, requires flexibility in application because of the variety of crops grown and production practices peculiar to specific areas of the country. It is a means of recognizing these local practices but must not be used as a device to establish or maintain an unrealistic cropland figure. As a general rule, land may be considered to be in a rotation pattern when a recognized system of cropping plans or land use is carried out over a period of years resulting in the land area being devoted to those

crops and land uses which contribute reasonable beneficial effects to the land. The county committee should determine a reasonable period of years, after which cropland that is not in an established rotation pattern will be reclassified as noncropland. As a matter of general policy this period should normally not exceed five years. It may be necessary in some areas to establish a longer rotation period for perennial legumes and grasses.

"(c) *Permanent vegetative cover (other than trees).* Cropland established in permanent vegetative cover, other than trees, shall be considered as cropland for a period of five years including the year of establishment and as long thereafter as it is determined to be in an established rotation pattern. Meadowland on which a light seeding or fertilizing operation is carried out at intervals will not be considered as tilled for the purpose of retaining the cropland classification on the area. Pasturing any acreage or cutting hay from native hayland shall not be considered as cropping."

There was evidence before the Review Committee to the effect that in 1959 Lye cultivated on his farm 11 acres of corn and 14 acres of sorghum that was used for silage for cows, and that 20 acres in millet and soy beans were used for temporary pasture; that practically all of the permanent pasture had been rotated within five years, except a 12-acre tract and a 5-acre tract which have been in fescue and clover since 1950.

It certainly cannot be held as a matter of law that the County Committee included land not eligible to be included as cropland in determining the cropland of the Lye farm in 1960.

In light of the findings of fact by the Review Committee and the applicable provisions of the Agricultural Adjustment Act and the Federal regulations pertaining thereto, in our opinion the judgment of the court below should be upheld.

Affirmed.