John B. LUKE

v.

REVIEW COMMITTEE, Composed of S. B. Thornton, R. B. Fritz, and E. L. Roge, Duly Appointed By U. S. Secretary of Agriculture in Accordance With and Pursuant to Agricultural Adjustment Act of 1938, as Amended.

Civ. A. No. 6202.

United States District Court
W. D. Louisiana,
Alexandria Division.

Oct. 14, 1957.

John A. Boatner, Jr., Bunkie, La., for plaintiff.

T. Fitzhugh Wilson, U. S. Atty., E. V. Boagni, Asst. U. S. Atty., Shreveport, La., for defendant.

HUNTER, District Judge.

This case arises under the Agricultural Adjustment Act of 1938, as amended, 7 U.S.C.A. § 1281 et seq., hereinafter referred to as the "Act". Plaintiff is a cotton farmer operating in Avoyelles Parish. Prior to 1957 he had operated a farm owned by John B. Snelling, comprising 450 acres of land, of which 318.1 acres is crop land, and identified in the records of the Agricultural Stabilization and Conservation Committee as Farm No. J–6515. On December 3, 1956, a Notice of Farm Acreage Allotment and Marketing Quota for the year 1957 of 71.2 acres of cotton was issued to the plaintiff as operator of the farm. On January 11, 1957, the plaintiff purchased the entire farm from John B. Snelling. On the same date he conveyed 299.92 acres of the farm to F. C. and E. A. Townsend, 220.7 acres of which was crop land. The plaintiff retained 150.8 acres of the farm, which included 97.4 acres of crop land. In the contract of sale the plaintiff attempted to convey one-half of the cotton allotment on farm No. J–6515, erroneously described as a 76 acre allotment, and to retain one-half of the allotment. On the same date, the plaintiff and the Townsends executed a lease agreement whereby the Townsends leased to the applicant 126 acres of the land purchased by them, which included 120 acres of the crop land. This lease agreement recited that the Townsends had received a 38 acre cotton allotment in the contract of sale of 299.92 acres of land, and attempted to grant such allotment to the plaintiff for the term of the lease.

The County Committee proceeded, under applicable regulations, to reconstitute the divisions of the farm. The Committee determined that the 150.8 acre tract owned by the plaintiff and the 126 acre tract leased by him were adjacent and would be operated as to cotton production identically as he had operated the original farm for some seven years preceding, with respect to the rotation of crops and the use of farm machinery and labor. Accordingly, the Committee determined, under Section 722.812(c) of the Acreage Allotment Regulations for the 1957 Crop of Upland Cotton, 21 F.R. 7817, that all the land to be operated by the plaintiff in 1957 constituted a farm and designated such farm as J–9501. The Committee further de-

termined that the land to be operated by the Townsends in 1957, of 173.92 acres, constituted a farm and designated it Farm No. J–9502. Once this determination was made, it became necessary for the County Committee, in accordance with the regulations, to apportion between the two farms the cotton allotment of 71.2 acres which had been granted to the original farm J–6515. The apportionment was made under the provisions of Section 722.817(h) (1) (i) (ii) of the regulations, which provides that the cotton acreage history for a divided farm shall be apportioned among the tracts in proportion to the acreage of crop-land on each tract. Farm J–9501 had 217.4 acres of crop land and farm J–9502 had 100.7 acres of crop land. When the base history for farm J–6515 was apportioned between the two farms, there resulted a cotton allotment for farm 1–9501 of 48.7 acres and a cotton allotment for farm J–9502 of 22.5 acres. Due notice of this allotment on farm J–9501 was given to the plaintiff on February 7, 1957. Within 15 days thereafter and pursuant to 7 U.S.C.A. § 1363, the plaintiff applied for a review of the farm marketing quota, including the acreage allotment by the local Review Committee. After a hearing on April 5, 1957, and the submission of briefs on behalf of the parties, the Review Committee determined that the County Committee had properly applied the regulations and affirmed the reconstitution of the farm and the farm marketing quota and resultant acreage allotment established for farm J–9501. The present action was instituted against the Review Committee pursuant to 7 U.S.C.A. § 1365, for the purpose of obtaining a judicial review of the Review Committee's action. This is a special statutory proceeding in which jurisdiction extends only to review the action of the Committee and the court is limited in its scope of inquiry to'questions of law and is bound by the findings of fact of the Review Committee if there is any competent evidence to support such findings. 7 U.S.C.A. § 1366, Smith Land Company v. Christensen, 10 Cir., 148 F.2d 184; Lee v. Berry, 219 S.C. 346, 65 S.E.2d 257; Rymer v. Garnett, Ky., 244 S.W.2d 439.

### Operation of the Act.

The purpose and necessity for the Act are set forth in 7 U.S.C.A. § 1282 and the legislative findings contained in 7 U.S.C.A. § 1341.

The Act actually establishes a marketing quota for each farm, which is the number of pounds of cotton that are produced on the acres of cotton allotted to the farm. 7 U.S.C.A. § 1345. Throughout the Act, the emphasis is on the farm, not on the owner or operator, and acreage allotments are based on the past planted history of cotton on the particular farm. 7 U.S.C.A. § 1344(f) (6). It is specifically noted in the notice of allotment and quota given to the plaintiff, "This acreage allotment has been established for the farm and not for any individual producer."

### The Issues as Raised by the Complaint.

The record discloses that the facts upon which the Review Committee based its decision are not in controversy. The plaintiff pegs its attack on four propositions:

1. (a) That the contract of sale and contract of lease should govern the reconstitution of the farm for the year 1957, and that the contract of sale and lease settle the right of the plaintiff to plant the entire cotton allotment for the original farm J–6515.

(b) That the farm was improperly constituted, as it should have been constituted in accordance with the terms of the contract of sale and lease, rather than the provisions of the regulation.

(c) That the County Committee incorrectly determined that the land to be operated by the plaintiff in 1957 constituted a farm under the regulations.

2. That the provision of the regulations, Section 722.825, prohibiting the transfer or assignment of cotton acreage allotments is arbitrary and capricious, and exceeds the authority and powers vested in the Secretary under 7 U.S.C.A. § 1375(b).

3. That if Section 722.825 of the regulations is within the authority of the Secretary, then said section violates the 5th and 10th Amendments to the Constitution of the United States.

4. That the determination of the Review Committee fails to give effect to the provisions of Sections 485.221 and 485.222 of the regulations under the Soil Bank Act.

It is the position of the defendant herein that it and the County Committee were governed by the provisions of the regulations as to the reconstitution of the farm, that the contract of sale and lease did not settle the right of the plaintiff to plant the entire cotton allotment for the original farm J–6515, that the farm was properly reconstituted, that the regulations are authorized and constitutional, and that the provisions of the Soil Bank Act, 7 U.S.C.A. § 1801 et seq., relied upon by the plaintiff, are wholly immaterial and irrelevant.

### Discussion.

The first attack made by the plaintiff in point of time is on the action of the County Committee, which was affirmed by the Review Committee, in determining that the land to be operated by the plaintiff in 1957 constituted a farm under the regulations. As a result of the execution of the contract of sale and contract of lease by the plaintiff, Luke, and the Townsends, there were to be two farm operations in 1957 on the land that had previously comprised farm J–6515. Information was available to the County Committee and uncontradicted evidence was introduced before the Review Committee, that with reference to cotton production, Mr. Luke would operate the land owned by him and the land leased by him from the Townsends identically as he had operated the entire original farm for 7 years preceding, with respect to the rotation of crops and with the same farm machinery and labor. It was further shown that the two tracts of land to be operated by Luke were adjacent and in fact, constituted one farm operation. The Committee is bound to follow the acreage allotment regulations for the 1957 crop of upland cotton issued by the Secretary of Agriculture in determining what land constitutes a farm. Section 722.812(c) reads: "Farm means all adjacent or nearby land under the same ownership which is operated by one person, including also: (i) any other adjacent or nearby farm or range land which the County Committee determines is operated by the same person as part of the same unit in producing range livestock, or with respect to the rotation of crops and with work stock, farm machinery, and labor substantially separate from that for any other land."

The language of the regulation is free from ambiguity. It provides unequivocally that a "farm" means all adjacent or nearby farm land operated by one person as one unit with respect to the rotation of crops and with work stock, farm machinery and labor substantially separate from that for any other land. The information available to the County Committee, and the evidence introduced before the Review Committee, which is in the record to be reviewed by this Court, meets the test for the definition of a "farm". Upon the facts before it, the County Committee had no choice but to determine that all land to be operated by the plaintiff in 1957 constituted a farm and the Review Committee had no alternative but to affirm such determination.

The Review Committee properly affirmed this determination by the County Committee, and its action is by this Court. The guiding principle for judicial review under the Agricultural Adjustment Act of 1938 was set forth in Lee v. Berry, supra, and Lee v. DeBerry, 219 S.C. 382, 65 S.E.2d 775, 777, wherein it was said: "The court is directed to affirm the determination of the Review Committee if its findings of fact are supported by substantial evidence," and substantial evidence means "only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." In reviewing the

findings of an administrative agency, the Courts are not to "scrutinize with a captious eye and weigh with an apothecary's scale every finding made by such an agency", but all findings are to be sustained if substantially supported in the record. Foreman and Clark, Inc., v. National Labor Relations Board, 9 Cir., 215 F.2d 396, 398, certiorari denied, 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697. " * * * it is not the Court's function to substitute its judgment for that of the Review Committee where the Committee has applied the broad phrases" in the regulations "to a specific state of facts * * *". Lee v. DeBerry, supra [219 S.C. 382, 65 S.E.2d 780].

■ The plaintiff's second attack upon the actions of the County Committee and the determination of the Review Committee is that his contract of sale and lease should govern the reconstitution of the farm, rather than the regulations. Again, it is noted that the matter of reconstituting a farm is specifically and unequivocally set forth in the regulations. The Committee was required to, and did, reconstitute farm J–6515 into two separate farms, in accordance with Section 722.817(h) (1) (i) (ii) of the regulations. The regulation simply provides that when land which was constituted as a single farm for the year 1956 is divided into two or more tracts for 1957 the acreages planted to cotton on the farm in 1954, 1955 and 1956 shall be divided among the tracts in proportion to the acreage of the crop land on each tract. The evidence and the findings of fact by the Review Committee indisputably show that the land to be operated by the plaintiff contained 217.4 acres of crop land, while the land retained by the Townsends included 100.7 acres of crop land. Consequently, the division of the cotton histories and the subsequent establishment of the allotments for each farm was made in accordance with the regulation, as shown by the 1957 Cotton Listing Sheet-Farm Cotton Acreage Allotment introduced in the record. The County Committee and the Review Committee are legally pro-

hibited from following the contract of sale and lease, which the plaintiff insists should be followed, since the Act and regulations under which cotton acreage allotments and quotas are established affirmatively determine how the cotton acreage history shall be divided, and the cotton acreage allotments established for a "farm". In addition to this affirmative action required on the part of the County Committee by the regulations, such Committee was specifically prohibited from carrying out the contractual arrangements of the parties, which were in conflict with Section 722.825 of the regulations. This section provides: "A farm marketing quota is established for a farm, and * * * may not be assigned or otherwise transferred in whole or in part to any other farm." As is evident throughout the Act and the regulations issued thereunder, acreage allotments are not established for individuals, but are established for a farm on the basis of the history of planted acreage on such farm. The construction argued for by the plaintiff seeks to establish marketing quotas and acreage allotments for an individual, which is directly contrary to the specific provisions of the Act and regulations.

■ The next issue raised by the plaintiff in the complaint is that the section of the regulations, 722.825, prohibiting the transfer or assignment of cotton acreage allotments is arbitrary and capricious and exceeds the authority and powers vested in the Secretary.

■ The Secretary clearly has power to issue regulations implementing the statute, 7 U.S.C.A. § 1375(b). The rule to be applied to determine the validity of a regulation is set forth with preciseness in Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 705, 44 L.Ed. 846, as follows: "In determining whether the regulations promulgated by him are consistent with law, we must apply the rule of decision which controls when an act of Congress is assailed as not being within the powers conferred upon it by the Constitution."

In applying this rule to the regulation and statute it should be emphasized, as has been previously noted, that quotas and allotments are established for farms and not for individuals. The Act would be impossible of administration if marketing quotas and the attendant acreage allotments could be indiscriminately assigned or transferred from one farm to another, as the construction argued for by the plaintiff would permit, nor could the necessary acreage histories be preserved upon which acreage allotments are based. 7 U.S.C.A. § 1344(f) (6).

■ This regulation is not new in the 1957 acreage allotment regulations. Since marketing quotas and acreage allotments were reinstated, effective with the 1954 crop of cotton, the same identical provision has been contained in the regulations. 1954, 18 F.R. 7527; 1955, 19 F.R. 7213; 1956, 20 F.R. 8247; 1957, 21 F.R. 7817. As a matter of fact, a provision to the same effect has been included in the regulations since the inauguration of the Acreage Allotment Marketing Quota Program on Cotton. The contemporaneous and settled administrative construction of a regulatory statute is entitled to great weight and should not be overturned unless clearly wrong, or unless a different construction is plainly required. Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917; United States v. American Trucking Association, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 53 S.Ct. 84, 77 L.Ed. 512; United States v. Shreveport Grain and Elevator Co., 287 U.S. 77, 53 S.Ct. 42, 77 L.Ed. 175.

The plaintiff further attacks his section of the regulations on the grounds that it violates the due process clause of the 5th Amendment to the Constitution of the United States, as well as the 10th Amendment to the Constitution.

It has long been so well established that the Agricultural Adjustment Act of 1938, including the marketing quota provisions thereof, are not violative of the 10th Amendment to the Constitution that it would serve no purpose herein to needlessly burden the record with a discussion of the point, other than to note the leading court decisions on the point. United States v. Shafer, D.C., 132 F. Supp. 659; 4 Cir., 229 F.2d 124; Rodgers v. United States, 5 Cir., 138 F.2d 992; Troppy v. La Sara Farmers Gin Co., 5 Cir., 113 F.2d 350; Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122.

We do not believe that the regulation in question violates the due process clause of the 5th Amendment. As has been previously noted herein, the scheme of regulation under the Agricultural Adjustment Act of 1938 is to control the supply of cotton by restricting the acreage planted to cotton. A marketing quota is established for each farm which has a cotton acreage history. This marketing quota is in turn translated into the number of pounds of cotton that are produced from the number of acres allotted to the farm for the year. The successful administration of the program necessitates that detailed records be kept by administrative personnel as to the history of planting and measurements of the cotton acreage on each farm. Since, under the law, the quota and its attendant acreage allotment is established for the farm on the basis of its past history of planted cotton, it should and must be provided that the farm marketing quota cannot be transferred or exchanged between farms.

The leading case on the entire question of constitutionality of the Agricultural Adjustment Act of 1938 is Wickard v. Filburn, supra, which, although concerned with the application of the Act to Wheat, reviews and analyzes the entire system of marketing quotas and acreage allotments. This analysis and discussion is pertinent not only to the crop of wheat, but also to the crop of cotton, or any other commodity coming under the provisions of the Act, inter alia, the Court held that the Act is not a deprivation of property without due process of law contrary to the 5th Amendment. As stated by the Court at page 129 of 317 U.S., at page 91 of 63 S.Ct.: "An Act of Congress is not to be refused application by the courts as arbitrary and ca-

pricious and forbidden by the Due Process Clause merely because it is deemed in a particular case to work an inequitable result." The Act has also been sustained as it relates to tobacco. Mulford v. Smith, D.C., 24 F.Supp. 919; 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092. Not only has the Act been sustained in regard to wheat and tobacco, but also in regard to cotton, the constitutionality of the cotton marketing quota provisions of the Act have been upheld. Troppy v. La Sara Farmers Gin Co., supra; Hawthorne v. United States, 5 Cir., 115 F.2d 805. See also on the general question of constitutionality, Bowers v. United States, 5 Cir., 226 F.2d 424; Usher v. United States, 4 Cir., 146 F.2d 369.

■ The last issue raised by the plaintiff in the complaint relative to the validity of the determination of the Review Committee is his contention that the determination of the defendant is contrary to and fails to give effect to certain provisions of the regulations under the Soil Bank Act.

Specifically, the plaintiff refers to Sections 485.221 and 485.222 of the regulations under the 1957 Acreage Reserve Program, as published in the Federal Register of December 29, 1956. The Soil Bank Act, as is now general knowledge, is a legislative scheme designed to remove acreage normally planted to allotted crops from production, and to afford the producer some remuneration for removing the land from production, and thus reduce unwieldy surpluses. Since the removal of the land from production affects all people who have depended upon the crop production from the particular tract of land for a livelihood, the Act and regulations thereunder include certain provisions for the protection of such people. Briefly, the Soil Bank Act provides that people displaced by putting the land in the Soil Bank, shall share in the compensation paid by the government. As an example, "A", a landlord, and "B", a sharecropper, or tenant, have been farming a tract. If "A", the landlord, decides to place the land in the Soil Bank, and thus displace "B", the sharecropper, or tenant, the agreement entered into between the land owner and the government must specify the basis upon which the compensation will be divided between the landlord and the sharecropper, or tenant, who is displaced. The pertinent part of Section 485.221 of the 1957 Acreage Reserve Program regulations reads as follows: "The agreement entered into with the producers shall specify the basis on which the landlords, tenants, sharecroppers * * * are to share in the compensation payable thereunder." In the instant case, the acreage allotment granted to the farm to be operated in 1957 by the Townsends, farm No. J–9502, by the County Committee was granted to a farm with which the plaintiff has no connection as a landlord, tenant, or sharecropper. It is difficult, thus to perceive in what respect the action of the Review Committee in affirming the County Committee's acreage allotment to the plaintiff is violative of any provision of the Soil Bank Program. Likewise, it is difficult to perceive how any action of the County Committee or the Review Committee could affect the plaintiff's farm, insofar as it is concerned with the Soil Bank Program.

Substantial evidence having been adduced before the defendant that the John B. Snelling farm J–6515 was properly reconstituted into two farms, and that the cotton acreage history was properly apportioned to said farms, all in accordance with the regulations and the Act and regulations being valid and constitutional, this Court affirms the determination of the defendant dated May 1, 1957 and dismisses the complaint.