AYRES, Judge.
Plaintiff, as the alleged assignee of a. described cotton-acreage allotment, seeks,, in this declaratory-judgment action, a decree recognizing his right to the use of the first 90 acres of cotton allotment as may be made by the United States Department of Agriculture through the Agricultural Stabilization & Conservation Service Committee to defendant Clifford Benson, or as-may be allotted to his lands. Made defendant in addition to Benson is Leon Fontana,, plaintiff’s alleged assignor, who purportedly first acquired the right from Benson and' who thereafter assigned it to plaintiff.
The trial court found that the purported' assignment of the acreage allotment was null, void, and unenforceable, reprobated by law, and prohibited under regulations of the-Department of Agriculture; that, moreover, it was an attempt to convey a personal right not legally transferable; that there was no basis under a lease or other-real right for the plaintiff’s exercise of any-allotment rights upon defendant’s property; that the issue as presented is moot since-there is no longer any Class “A” allotment as contemplated by the purported agreement; and, finally, that the arrangement contemplated by the parties, if carried into- *623 effect, would work a fraud upon the Government in connection with the cotton program.
There was judgment accordingly rejecting plaintiff’s demands and he appealed.
The factual background may be first reviewed for an appreciation and understanding of the issues as they are resolved. Prior to November 21, 1959, defendant Clifford Benson was the owner of two separate tracts of land situated in Ouachita Parish. One of these contained 122.87 acres and the other, 320 acres. For several years Benson farmed both tracts as one farm, with a cotton allotment assigned thereto for approximately 90 acres. On November 21, 1959, Bensold sold Fontana the tract comprising 122.87 acres for a price of $51,356.00, of which amount $14,893.24 was paid in cash. The balance of $36,462.76 was represented by Fontana’s promissory note, secured by a vendor’s lien retained and a special mortgage granted upon the property. Following this sale but on the same date Benson gave a letter to Fontana with reference to the cotton allotment, the substance of which is as follows :
“Reference is made to our understanding and agreement in connection with the sale of the acreage in Section 1, Township 17 North, Range 4 East and Section 36, Township 18 North, Range 4 East, concerning Class A cotton allotment, and this is to confirm to you that you have my consent to use the first ninety (90) acres of Class A cotton allotment which may be granted to me each year under the Government’s cotton program for a period of ten (10) years, commencing with the year 1960 and terminating November, 1969, which is the identical period of the term of your installment mortgage note held by me representing the unpaid balance due on the consideration for the sale of the acreage sold to you this date.”
For the crop years 1960, 1961,-and 1962, Fontana utilized the allotment and planted 90 acres of cotton on the lands purchased; and, in 1963, when Benson was granted an additional allotment of 9.5 acres upon the two tracts, still combined so far as the Agricultural Stabilization & Conservation Service Committee knew, Fontana planted cotton upon 94.7 acres of his tract. On February 17, 1964, the Agricultural Stabilization & Conservation Service Committee, at a hearing, was informed of .Benson’s consent for Fontana to receive the allotment as theretofore made on his combined farms and to plant the acreage allotted upon the tract acquired by Fontana. Thereupon, the Committee refused to permit Fontana the use of the 90-acre cotton allotment on his tract and revoked the allotment as theretofore made to Benson. It then fixed separate allotments for Fontana and Benson upon a basis of their separate properties.
The quoted facts are contained in a stipulation filed in the record wherein it was agreed that, as of 1964, Benson no longer had such control as would enable him to transfer any cotton-acreage allotment to Fontana for use on property purchased by Fontana because such transfer would have been illegal and in conflict with regulations promulgated under statutory authority; and, moreover, there is now no Class “A” cotton allotment under the program of the United States Department of Agriculture.
On December 14, 1965, Fontana attempted to assign or to lease to plaintiff his, Fontana’s, rights as conferred in Benson’s letter. Plaintiff alleges this conferred upon him the right to the use of Benson’s first 90 acres of cotton allotment. Thereafter, plaintiff demanded that Benson designate the area to be planted on Benson’s property.
From our review of the record, we do not deem it necessary to discuss all the defenses urged by defendant Benson and sustained by the trial court. It appears to us that a primary defense decisive of this case is that the purported assignment of the cotton-acreage allotment was illegal *624 said in conflict with the appropriate regulations prescribed by the United States Department of Agriculture and, as such, was null, void, and unenforceable. In the stipulation to which we have referred, it was stated that as of 1964 Benson no longer had capacity to transfer to Fontana any cotton-acreage allotment whatsoever for use on Fontana’s land in view of the fact that such transfer would have been illegal and in conflict with the Department’s regulations. In support of his position Benson cites and relies upon the cases of Luke v. Review Committee, 155 F.Supp. 719 (U.S.Dist.Ct., W.D. Louisiana—1957), and Williamson v. Holland, 232 F.Supp. 479 (U.S.Dist.Ct., E.D. North Carolina—1963).
In the Luke case, plaintiff was a cotton farmer who, prior to 1957, had operated a 450-acre farm owned by John B. Snelling, of which 318.1 acres was cropland and designated by the local Agricultural Stabilization & Conservation Service Committee as one farm on which was granted a cotton allotment of 71.2 acres. On January 11, 1957, plaintiff purchased the entire farm from Snelling and, on the same date, conveyed 299.92 acres of the land to F. C. and E. A. Townsend, 220.7 acres of which was cropland. Plaintiff retained 150.8 acres, which included 97.4 acres of cropland. In the contract of sale plaintiff attempted to convey one-half of the cotton allotment made to Snelling’s combined farmlands and to retain one-half of the allotment. Simultaneously, the Townsends leased to plaintiff 126 acres of the land purchased by them, 120 acres of which was cropland. This lease agreement recited that Townsend had received a 38-acre cotton allotment in the contract of sale of the 299.92 acres of land, and attempted to grant such allotment to plaintiff for the term of the lease. The Committee canceled the allotment covering the farm as originally owned by Snelling, reconstituted it as two tracts of land, and designated them as two separate farms. On a basis of the cotton-acreage history of each tract, the allotment of 71.2 acres was apportioned between the two farms. This resulted in one of the tracts being granted an allotment of 48.7 acres and the other 22.5 acres. After appropriate proceedings before the administrative agencies, plaintiff resorted to an action in court for determination of his rights. The court, in holding that the Committee was prohibited from carrying out contractual arrangements of the parties in conflict with-the regulations, said:
“The County Committee and the Review Committee are legally prohibited from following the contract of sale and lease, which the plaintiff insists should be followed, since the Act and regulations under which cotton acreage allotments and quotas are established affirmatively determine how the cotton acreage history shall be divided, and the cotton acreage allotments established for a ‘farm’. In addition to this affirmative action required on the part of the County Committee by the regulations, such Committee was specifically prohibited from carrying out the contractual arrangements of the parties, which were in conflict with Section 722.825 of the regulations. This section provides: ‘A farm marketing quota is established for a farm, and * * may not be assigned or otherwise transferred in whole or in part to any other farm.’ As is evident throughout the Act and the regulations issued thereunder, acreage allotments are not established for individuals, but are established for a farm on the basis of the history of planted acreage on such farm. The construction argued for by the plaintiff seeks to establish marketing quotas and acreage allotments for an individual, which is directly contrary to the specific provisions of the Act and regulations.” (155 F.Supp. 719, 723.)
The holding in the case of Williamson v. Holland, supra, is in accord with the pronouncements in Luke v. Review Committee, supra. That case involved an agreement of Jesse Thomas to sell all of his *625 tobacco-acreage allotment. With reference to this arrangement, the court stated:
“The agreement of Jesse Thomas in 1956 that he was selling all the tobacco acreage allotment which went with his farm is of no effect. It is well settled that the acreage allotment is ‘made to the farm and not the person who owns or operates the farm and therefore runs with the land.’ Lee v. Berry, 219 S.C. 346, 65 S.E.2d 257 (1951); Mace v. Berry, 225 S.C. 160, 81 S.E.2d 276 (1954). The only tobacco acreage allotment which plaintiffs rightfully acquired was that part which should be allotted to the 6.3 acre tract and the 3.6 acres which they purchased in lots. This is true even though the Onslow County A.S.C.S. Office erroneously transferred the whole farm to the name of the plaintiffs in 1956, which was done on request of the plaintiffs.” (232 F.Supp. 479, 483.)
The factual situations in the cited cases are comparable to the facts established to exist in the instant case, and the pronouncements therein made are applicable here. The terms of the Benson letter, contrary to and in conflict with the regulations of the Department of Agriculture and the rulings of the Agricultural Stabilization & Conservation Service Committee of February, 1964, are null, void, and have no legal effect.
Nevertheless, plaintiff contends that if the assignment is ineffective to transfer the allotment to plaintiff’s lands, then and in that event he should be authorized to exercise rights to the allotment upon lands of Benson. If such was the purpose of the letter, the agreement is clearly unenforceable, null, and void. The letter did not provide for such a contingency; nor did it have the effect of a lease or of conferring any other real right upon Benson’s lands. Moreover, no consideration or rent was specified for the use of Benson’s property.
The judgment appealed is accordingly affirmed at plaintiff-appellant’s costs.
Affirmed.