**W. A. McCLUNG, Appellant,**

v.

**W. C. THOMPSON, Appellee.**

**W. C. THOMPSON, Appellant,**

v.

**W. A. McCLUNG, Appellee.**

**Nos. 19190, 19191.**

United States Court of Appeals
Eighth Circuit.

Oct. 2, 1968.

Ohmer C. Burnside, Jr., Lake Village, Ark., and H. B. Stubblefield, Little Rock, Ark., for W. A. McClung.

Don F. Hamilton, of House, Holmes & Jewell, Little Rock, Ark., for W. C. Thompson.

Before MATTHES, GIBSON and BRIGHT, Circuit Judges.

MATTHES, Circuit Judge.

These appeals present two basic questions. In No. 19,190 the question is whether W. C. Thompson, who instituted this action, is entitled to recover damages from W. A. McClung for an alleged conversion of a rice allotment; in No. 19,191 we must decide whether Thompson should have been permitted to offer parol evidence in support of his claim that he had not assumed payment of interest on a mortgage negotiated by McClung on land purchased by Thompson. The district court granted McClung's motion for directed verdict on the interest question. Thompson's claim, based on conversion, was submitted to the jury which found he had been damaged in the amount of $15,000. Both parties have appealed from the court's judgment. McClung contends that the court should have granted his motion for summary judgment or in any event his motion for a directed verdict on both claims. Thompson appeals from the court's refusal to submit the interest question to the jury.

Diversity of citizenship and the amount in controversy established jurisdiction.

By a written contract of sale and a separate escrow agreement entered into on March 18, 1965, Thompson agreed to purchase from McClung 1212.5 acres of land in Desha County, Arkansas, for $280,000. Thompson paid $25,000 in cash, agreed to assume a mortgage in the principal amount of $175,000, which was to be negotiated by McClung, and to pay the remainder of $80,000 in installments on specified dates. The sale was to be consummated on or before January 20, 1966.

Thompson, who had been engaged in buying and selling real estate for a number of years, contracted with H. L. Cooper and his wife on April 16, 1965, for the sale of 800 acres of the McClung tract for $200,000. On January 14, 1966, Thompson agreed to sell the remaining approximate 412 acres to W. H. Hanna and T. G. Tuggle for $95,000. Hanna and Tuggle paid $12,500 in cash, agreed to pay $22,500 on or before January 20, 1966, and assumed $60,000 of the mortgage which McClung had obtained from the Northwestern Mutual Life Insurance Company.

Shortly before the closing date of January 20, 1966, a dispute developed between McClung and Thompson over payment of the accumulated interest on the $175,000 mortgage which McClung had obtained. In order to satisfy the escrow agent and to be in a position to consummate the purchase from McClung and the sales to Cooper, Hanna and Tuggle, Thompson was required to and did pay the disputed amount of interest. He seeks to recover that amount in this action.

Thompson alleged in his complaint that the 1212 acre tract had a history of 100 acres of rice allotment; that "[u]nder regulations then existing, these allotments were not subject to reservation, transfer or assignment, but were allocated to the land. Subsequent to the contract for sale, * * * and the date of conversion, January 20, 1966, rice allot-

ments became assignable or transferable." He alleged further that McClung had transferred the rice allotment and that this decreased the value of the land. McClung pleaded that the purported assignment was not permitted by law and hence was without legal effect.

Defendant's motion for a summary judgment was filed on June 8, 1966. Supporting data consisted in part of defendant's affidavit, a letter from the Northwestern Mutual Life Insurance Company to the effect that interest on the loan to January 1, 1966, amounted to $7,913.04, and a letter dated May 11, 1966, from the Desha County Office Manager of the Agricultural Stabilization and Conservation Service to the defendant informing him that there was no record in that office of any rice allotment on the 1212 acres of land during defendant's ownership. The letter also stated:

"In regard to the sale of rice allotments, the Agricultural Stabilization and Conservation Service does not permit the sale or assignment of rice acreage from one person or farm to another. Rice acreage can only be traded for cotton acreage. Therefore, any sale or assignment executed in January, 1966 of any rice allotments from one person to another would be invalid and not recognized."

Plaintiff resisted the motion for summary judgment. Included in the supporting documents is a copy of an agreement between McClung and Hayden J. Harper and his wife, executed on January 8, 1966, and filed in the district court on August 15, 1966, describing two tracts owned by McClung containing 912.5 acres and land owned by the Harpers. By this instrument the parties purported to transfer all rice allotted to the McClung tracts to

the land owned by Harper. Subsequent to the filing of the McClung-Harper agreement in the district court, defendant filed an amendment to his motion for summary judgment supported in part by an attached affidavit of W. H. Hanna and T. G. Tuggle, purchasers of the 412 acres. This affidavit recites that the question of whether any part of the 412 acres had been allotted for rice was not discussed in affiants' negotiations with McClung:

"We [Hanna and Tuggle] purchased said lands from W. C. Thompson for use in growing other crops and are not concerned in any way about whether or not there is any rice allotment on or that goes with the ownership of this land."

The court, entertaining the view that a genuine issue of fact existed as to both of plaintiff's claims, denied the motion for summary judgment.

## I. THE RICE ALLOTMENT ISSUE

Plaintiff's theory, framed by his complaint and which he endeavored to establish, is that defendant had wrongfully converted to himself or transferred to another person (Harper) the rice acreage allotted to the 1212 acres.[1]

Conversion in law is defined as an "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of the owner's rights. * * * Any unauthorized act which deprives an owner of his property permanently or for an indefinite time." Black's Law Dictionary 402 (4th ed. 1951). Another recognized authority defines the term as "[a]ny distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, such as a tortious

---

[1]. The court adopted plaintiff's theory and so instructed the jury:

"Plaintiff contends that part of the lands in question, to-wit, 912.5 acres, had a history of rice production prior to defendant's ownership and these lands were entitled to a rice allotment which defendant, prior to conveying to

the plaintiff, wrongfully transferred or caused to be transferred, thereby depriving plaintiff of the rice allotment on this particular tract of land. Plaintiff claims damages for the wrongful conversion of the rice allotment to which the 912.5 acre tract was entitled."

taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession permanently or for an indefinite time." Ballentine's Law Dictionary 286 (2d ed. 1948). The district court, apparently on the authority of Plunkett-Jarrell Grocery Co. v. Terry, 222 Ark. 748, 263 S.W.2d 229, 44 A.L.R. 2d 917 (1953), instructed the jury that "[f]rom a legal standpoint, a conversion consists either in the appropriation of the thing or things to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it to the exclusion of or in defiance of the owner's rights, or in withholding the possession of the property from the owner under a claim of title or ownership inconsistent with that of the owner. * * * Constructive conversion takes place when a person does such acts in reference to the property of another as amount in law to the appropriation of the property to himself or his beneficial use. Direct conversion is where actual physical possession of the property is taken."

Thus, it is convincingly clear that the case was tried on the theory that a rice allotment is a species of personal property, goods or chattels which one may appropriate, exercise dominion over, or transfer to another. The court properly instructed the jury "that at the date and times involved in this lawsuit, * * * under the provisions of the Secretary of Agriculture's regulations private individuals were not permitted to transfer rice allotments and that any agreement between private parties attempting to transfer a rice allotment or to make a rice allotment the subject of a bargain or contract would be in violation of federal regulations, and contrary to the federal statute under which the regulations are promulgated." Nevertheless the court submitted the conversion concept and permitted the jury to find that the allotment had been appropriated or transferred.

It is our view that a rice allotment runs with the land, is a part of it, and cannot effectively be transferred by one person to another, nor can it be transferred to other land except by complying with the procedural requirements of the regulations, which was not done in this case.

The provisions of the Agricultural Adjustment Act relating to "Marketing Quotas—Rice," 7 U.S.C. §§ 1351 through 1356, reveal with certainty that acreage allotments for rice shall be apportioned to *farms*. This is also implicit in 7 U.S.C. §§ 1362 and 1363 which relate to publication and review of quotas.

Likewise, the regulations provide that crop allotments are made to the land and not to the individual farmer. Certain states are designated as "producer states" and others as "farm states." Arkansas is classified as a "farm state." 7 C.F.R. § 730.1511(m). This means that "farm rice allotments are determined on the basis of past production of rice on the farm and the rice allotments previously established for the farm in lieu of past production of rice by the producer and the allotments previously established for the producer." Moreover, 7 C.F.R. § 719.2(a) defines "allotment" as "acreage allocated to a *farm for a year* for cotton, peanuts, rice, tobacco, or wheat, pursuant to the Agricultural Adjustment Act of 1938, as amended." (Emphasis added). In addition, Rice Marketing Quota Regulations for 1964 and subsequent crop years provided:

" § 730.1564 *Marketing quotas not transferable.* A farm marketing quota established for a farm may not be assigned or otherwise transferred in whole or part to any other farm."

Federal and state courts are in accord in holding that acreage allotments under the Agricultural Adjustment Act and the applicable regulations run with the land and that such allotments cannot be affected by bargains between individual farm owners. Hart v. Hassell, 250 F. Supp. 893, 897 (E.D.N.C.1966); Williamson v. Holland, 232 F.Supp. 479, 483

(E.D.N.C.1963); Luke v. Review Committee, 155 F.Supp. 719, 723 (W.D.La. 1957); Allen v. Benson, 192 So.2d 622 (La.App.1966);[2] Duncan v. Black, 324 S.W.2d 483, 485 (Mo.App.1959); Mace v. Berry, 225 S.C. 160, 81 S.E.2d 276 (1954); Lee v. Berry, 219 S.C. 346, 65 S.E.2d 257 (1951).

■ We therefore conclude that there is no basis in fact or law to sustain the court's action in submitting the conversion issue to the jury. The McClung-Harper document of January 8, 1966, was of no legal effect. It did not operate to transfer the allotment from the McClung land to that owned by Harper. Procedures for allocation of allotments by a land owner upon reconstitution of a parent farm are provided for by the regulations. 7 C.F.R. § 719.1—.13 (29 F.R. 13370). Here, there is no claim of compliance with the regulations, and the evidence shows they were ignored.

■■ We have been cited to no case and diligent research discloses none which lends any support to the conversion theory. To permit owners to enter into an arrangement for the transfer of a crop allotment in disregard of the regulations would be contrary to the general scheme and purpose of the Agricultural Adjustment Act. Sections 1352 and 1353, 7 U.S.C., and the applicable regulations, 7 C.F.R. §§ 719.8, 730.1510—.1535, delineate procedures for every phase of the distribution of acreage allotments from initial apportionment to settlement of an estate. Even distribution of allotments by agreement or transfer is always made subject to administrative approval. In the few cases involving a controversy between two or more farm owners over claims of ownership to the same crop allotment, the claims have been submitted to the administrative agency, and the suit which followed was for review of its findings. See, e. g., Hart v. Hassell, supra; Williamson v. Holland, supra. In none of these cases did the claimants attempt to litigate the issue among themselves. We believe that to allow claimants to do so would be to usurp the functions of the agency created to administer the program. Adverse claimants may not permissibly submit to the courts the determination of an issue which should be decided initially at the administrative level.

We also entertain a serious doubt whether plaintiff sustained any damage; however, we find it unnecessary to probe into this issue.

In summary, the court should have granted defendant's motion for a directed verdict on the conversion claim.

## II. INTEREST ISSUE

The district court ruled that the escrow agreement was not ambiguous, by its terms Thompson assumed payments of interest on the $175,000 mortgage from the date of its execution, and therefore no issue of fact remained for the jury's determination. We believe the court erred in its interpretation of the contract, that it is ambiguous, and the parties should have been permitted to introduce parol evidence relevant to their intention.

■ Ordinarily, the court should construe a written contract and declare its meaning to a jury, but where there is an ambiguity parol evidence is admissible to explain the intent of the parties, and it then becomes a question for the jury,

---

2. *Allen* involved an attempted assignment of a cotton acreage allotment. The assignee brought a declaratory judgment action seeking a decree recognizing his alleged right to the allotment under the attempted assignment. The trial court found that the purported assignment of the acreage allotment was "null, void, and unenforceable, reprobated by law, and prohibited under regulations of the Department of Agriculture." The Court of Appeal of Louisiana affirmed, relying on the regulations, Luke v. Review Committee, supra, and Williamson v. Holland, supra.

under proper instructions, to resolve. Rogers v. American Insurance Co., 338 F.2d 240 (8th Cir. 1964); Minnesota Mutual Life Insurance Company v. Wright, 312 F.2d 655 (8th Cir. 1963); Fort Smith Appliance & Service Co. v. Smith, 218 Ark. 411, 236 S.W.2d 583 (1951); Wisconsin & Arkansas Lumber Co. v. Fitzhugh, 151 Ark. 81, 235 S.W. 1001 (1921).

We turn then to the escrow agreement. It obligated Thompson to pay "the sum of $280,000 for the land above described," $25,000 of which was paid "cash in hand." That amount was deposited with the escrow agent to be delivered by it to McClung upon notice that he had consummated a "realty loan in the principal amount of $175,000 from Northwestern Mutual Life Insurance Company * * *, which loan the buyer hereby agrees to assume as part of the above recited total consideration and the remaining sum of $80,000 to be paid by the buyer to the escrow agent." The agreement provided that seller would retain possession of the land for the crop year 1965 and would satisfy all taxes for the tax year 1964. It recited that the seller had executed and delivered to the escrow agent a warranty deed "subject only to the mortgage to the Northwestern Mutual Life Insurance Company in the principal sum of $175,-000."

■ It is apparent from the trial judge's comments in rejecting Thompson's offer to explain the true intention of the parties that he believed the assumption of the principal amount of the loan automatically imposed an obligation on Thompson to pay all interest. In reaching that conclusion the court overlooked or failed to accord due consideration to several factors which persuade us to adopt a different view. (1) The loan was consummated within a relatively short time after March 18, 1965.[3] So far as we can discern from this record McClung received and benefited from the proceeds of the loan prior to date of consummation of the Thompson transaction. (2) McClung retained possession of the land for the crop year 1965. (3) Thompson was obligated to pay the taxes for 1965. (4) The agreement does not explicitly obligate Thompson to pay the interest. It is silent in this regard. But there is language lending itself to the interpretation that the total amount to be paid was $280,000.

We have studied Sheffield v. Maxwell, 163 Ark. 448, 260 S.W. 399 (1924); Kirby v. Young, 145 Ark. 507, 224 S. W. 970, 228 S.W. 53 (1920); Nakdimen v. Brazil, 131 Ark. 144, 198 S.W. 524 (1917), cited in support of the court's action. They do not compel affirmance. Unlike our situation, in each of those cases the grantee, by unambiguous language in the *deed*, assumed payment of the existing mortgage. On the facts presented the Arkansas Supreme Court held assumption of the mortgage included the interest.

■ We believe it is self evident that whether the assumption of a mortgage encompasses interest depends in the first instance upon the nature and language of the assumption agreement. If, as here, it is indefinite, all of the attendant circumstances should be developed, by parol evidence if necessary, to the end that the intent of the parties may be ascertained.

The judgment is vacated and the cause is remanded with directions (1) to enter judgment for McClung on the conversion issue; (2) to retry the interest issue. No costs shall be taxed for either party.

3. The record does not reveal with clarity the exact date. There is testimony that the loan was made "thirty, sixty, ninety days after March 18." We do know that interest to January 1, 1966, amounted to $7,913.04.