## Richmond

### P. D. GRUBB, ET ALS. V. H. G. SHIRLEY, STATE HIGHWAY COMMISSIONER.

November 20, 1939.

Record No. 2163.

Present, All the Justices.

*Thomas F. Walker,* for the plaintiffs in error.

*Abram P. Staples, Attorney-General,* and *A. B. Carney, Assistant Attorney-General,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The petitioners, P. D. Grubb and the heirs of his deceased wife, Polly Anne Grubb, challenge a judgment rendered in their favor against the State Highway Commissioner for $973 as compensation for land taken by condemnation proceedings and damages to the residue. There were two awards made by the commissioners. The first award which fixed the damages and compensation at $2285 was set aside by the court. The second ascertained damages and compensation at $973 and it was confirmed by the court. The error assigned is that the court should have confirmed the first award and we are asked to reinstate it and to annul the subsequent proceedings.

On September 4, 1936, a declaration was filed with the clerk of the Circuit Court of Wythe county by the State Highway Commissioner stating that condemnation proceedings were necessary to acquire for highway purposes 1.47 acres of land belonging to P. D. Grubb and that a fair value for the land taken and damages to the residue was $488. P. D. Grubb was the life tenant of the farm on which the strip was situated and as such, thought that he had the sole control of it. He entered into negotiations with the representative of the Highway Commissioner which resulted in an agreement as to the amount of compensation for the land to be taken, damages to the residue and for the construction of an underpass by the Highway Com-

missioner through which his cattle might pass and obtain water from a spring situated on a small tract of land belonging to the petitioners on the opposite side of the new road. The new highway had separated his home from the spring which he had used for more than 50 years. The Highway Commissioner was under the impression that P. D. Grubb was the owner in fee of the property. A contract was drawn in which the compensation was fixed at $973. Provision was also made for the underpass. P. D. Grubb signed the contract and sent it to Richmond.

Later, upon investigation by the attorney for the Highway Department, it was disclosed that P. D. Grubb was not the sole owner of the property through which the road was to be built, but that he owned only a life estate therein. At his death it was to pass to the heirs of his deceased wife, Polly Anne Grubb. This information caused the attorney to write Mr. Grubb the following letter: "Due to the state of the title to your property it is necessary that we have a condemnation suit. Accordingly the sheriff will serve you and your children who live in Wythe county with a notice of this suit and there will be an order of publication in the newspaper. I am giving you this information so that you will understand the complete situation." This letter was written on December 21, 1936, and signed by S. B. Campbell, who acted as attorney for the Highway Department. From this letter Mr. Grubb understood that the contract would be superseded by the condemnation proceedings and he employed counsel to represent him and his children.

Condemnation proceedings were instituted and in the petition filed the amount of land to be taken was increased from 1.47 acres, as agreed in the contract, to 1.74 acres. The commissioners who had been appointed by the court viewed the premises and at the hearing the contract was introduced over the objection of the attorney for the landowners. The commissioners received the contract and carried it with them to the jury room. Their report showed the value of the land to be taken to be $250 and damages to

the residue of $2035, making the total award of $2285, but they did not mention the contract in their report. The State Highway Commissioner excepted to the report on the last day that exceptions could be filed. The main objection raised was the failure of the commissioners to "set forth such contract in their report", as is required by Code, section 4380. The court sustained the exception on that ground and set aside the report. A second commission was appointed and after viewing the land and hearing evidence, awarded the plaintiffs in error $973 for the land taken and damages to the residue.

There are three assignments of error but it is only necessary for us to consider the first which was the failure of the lower court to overrule the exceptions of the Highway Commissioner to the first commissioners' report and its failure to enter a judgment thereon. If the court erred in setting aside the first report it is our duty to reinstate the report and enter judgment against the Highway Commissioner for the amount of the award with interest and costs.

As indicated, the only reason assigned by the trial court for its action was the failure of the commissioners to "set forth such contract in their report", in accordance with Code, section 4380. That section is as follows: "If the company and the person whose land, or any interest or estate therein, is being condemned under the provisions of this chapter shall, before the commissioners make their report, enter into any contract in relation to the building, operating, or maintaining the proposed work, or in relation to fencing, culverts, depots, stations, crossings, sidings, cattle-guards, damage from fire, injury to or destruction of property, real or personal, or like matters, it shall be the duty of the said commissioners, if said contract is brought to their attention by the parties thereto, to set forth such contract in their report, to be considered and acted on by the court as a part of the said report; and if the said report be confirmed, and the land, or the interest or estate therein, be taken, the said contract shall thereafter run

as a covenant with the said land, or with the interest or estate therein, so taken."

Counsel for the petitioners contend that the requirement of the statute is purely a mechanical one; that the objection founded upon the failure to report the contract was technical and insufficient to have justified the court in setting the report aside, because substantial justice had been done; that the Highway Commissioner had vitiated the contract by making material changes therein without the consent of the petitioners and that in any event the Highway Commissioner had waived the contract by not relying upon it and by instituting condemnation proceedings.

P. D. Grubb had no power to enter into a contract with the Commonwealth of Virginia agreeing to grant and convey in fee simple the land in question, because, as we have seen, he did not own the fee. He could only grant and convey his own interest which was a life estate. The statute did not require the commissioners to set forth the contract in their report as to the owners of the fee because there was no contract in so far as they were concerned.

The contract, if valid, and if it was not waived by the Highway Commissioner should have been set forth in the report of the commissioners as affecting the interest of P. D. Grubb.

However, it is perfectly clear from the record that neither the Highway Commissioner nor the landowners asked that the contract be made a part of the report. In fact the formal draft of the report was made by counsel for the Highway Commissioner and he failed to submit any information therein of the existence of the contract. Through the entire proceedings leading up to the first award neither party insisted upon the contract. It was only after the award was made that counsel for the Highway Commissioner invoked the provisions of section 4380. Prior to that time he made no effort to have the commissioners report the contract. The clear inference is that it was purely an after-thought. Under these circumstances we are of the opinion that the parties did not rely upon the contract

but abandoned it, and that they did not desire it to be set forth in the report of the commissioners.

Again it is quite clear from the record that the contract now invoked by the Highway Commissioner is not the identical contract which was signed by P. D. Grubb. The testimony and affidavit of the right of way agent of the Highway Commissioner disclose that the quantity of land taken, the width, plans and blue print were changed after the contract had been signed by Grubb. However, we do not rest the decision of the case upon this objection.

A statute somewhat similar to section 4380 was enacted by the General Assembly in 1883-84 and carried in the Code of 1887 as section 1090. This act was repealed as disclosed by the Code of 1904 and a new section was then written which is carried in the Code of 1904 as section 1105f, subsection 20. From that time to the present it has remained the same. When the new act was placed in the Code of 1904 this language was added, "and if the said report be confirmed, and the land, or the interest or estate therein, be taken, this said contract shall thereafter run as a covenant with the said land, or with the interest or estate therein, so taken".

█ █ The evident purpose of the original act was to preserve contract rights after the exercise of the right of eminent domain by railroads and other similar companies in relation to building, operating or maintaining the proposed work, or in relation to fencing, crossings, culverts, depots, stations, sidings, cattle-guards, damage from fire, etc. Then in 1904 the new statute after embracing the same language as was contained in section 1090 of the Code of 1887, added new language and made such contracts run as covenants with the land. While originally the statute applied to the acquisition of land by railroads and other like companies by eminent domain it now also applies to the Highway Commissioner in acquiring rights of way for highways by eminent domain. If there are contracts relating to fencing, culverts, etc., and the parties desire to preserve these rights and have them run as covenants with the land it is incum-

bent upon them to bring such matters to the attention of the commissioners and to see that their contracts are set forth in the commissioners' report. If they fail to do this and the report of the commissioners does not embrace the contract, such failure alone is not just cause for setting the report aside. It might be noted however that P. D. Grubb owning only a life interest could not create any covenants that would run with the land.

■ The legislature never intended that the failure of the commissioners to set forth any contract that might have been entered into between the parties should nullify the report. There is no language in the statute that expresses any such intention. Certainly, if the legislature intended to vitiate and set at naught all such reports it would have made its purpose clear by plain and unambiguous language.

There was no evidence tending to show that the first award was excessive or that it was not sustained by the evidence. Likewise, there was no evidence tending to show that the commissioners were actuated by any bias or prejudice or that they were guilty of any misconduct. The instructions of the court to the commissioners were not objected to by either side and there is nothing in the record which discloses that they failed to follow them. The instructions fully comprehended the law as applicable to the case and were fair to both sides, but they did not tell the commissioners to set forth the contract in their report because no such request was made by either side.

■ We are of opinion that the first report of the commissioners should have been confirmed. The judgment will therefore be reversed and a final judgment entered here upon the award of the first report with interest and costs.

*Reversed.*