HENRY R. JEFFRESS, ET AL.

V.

GARLAND STITH

Record No. 900867

March 1, 1991

Present: All the Justices

H. *Benjamin Vincent* for appellants.
C. *Gilbert Hudson, Jr.* for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this case we decide whether a federal statute or regulation authorizes a life tenant to sell a farm's federal crop allotment and quota entitlement in derogation of the rights of the remaindermen.

On March 16, 1976, by deed recorded in the Clerk's Office of the Circuit Court of Greensville County, Robert and Emma R. Jones conveyed an 18-acre parcel of land, subject to their life estates therein, to their daughter Leola J. Jeffress and her husband, Henry R. Jeffress, as tenants by the entireties, with right of survivorship as at common law. Upon Emma Jones' subsequent death, Robert Jones became the sole life tenant.

On May 9, 1986, upon receipt of a United States Department of Agriculture, Agricultural Stabilization and Conservation Ser-

vice (ASCS) form signed by Jones purporting to sell the farm's flue-cured tobacco allotment and quota (collectively the tobacco quota)[1] to Garland Stith, the local ASCS office transferred record ownership of the tobacco quota to Stith. The form indicated that Stith, who had been leasing the farm from Jones and raising tobacco on it, was the "operator" and that Jones was the owner of the "selling farm."

The local ASCS office records also listed Jones as the owner of the farm. ASCS personnel are not required to examine the records in the local clerk's office to verify ownership of the land covered by tobacco quotas. Accordingly, they customarily do not do so, and did not do so in this case.

Stith paid for the tobacco quota with two checks payable to Jones that were endorsed later by Jones and his daughter, Leola J. Jeffress. The first check bore the notation "For Payment of tobacco" and the second check, "Payment in full for tobacco allotment Bought."

After Jones' death in the summer of 1988, the Jeffresses went to the local ASCS office to have the tobacco quota registered in their names because they were then the fee simple owners of the land. They were unsuccessful because Stith, claiming to have purchased the entire tobacco quota and not just a life interest therein, refused to sign the documents necessary to transfer the quota to them.

Consequently, the Jeffresses filed this suit in equity to "void" the sale of their remainder interest in the quota and to obtain a decree compelling Stith to execute the necessary documents to enable them to register the quota in their names. Leola Jeffress died after this suit was filed, but before trial.

Finding that Jeffress was "not entitled to the allotment purchased by [Stith]," the court entered judgment for Stith. Jeffress appeals.

A review of the legislation establishing tobacco quotas and authorizing their transfer is necessary to understand the issue. In most cases, flue-cured tobacco quotas are issued to a farm based

---

[1] In general, the allotment for tobacco represents the acreage of each tobacco farm authorized for the quota. 7 U.S.C. § 1314c(a)(4) (1988). The "farm marketing quota" is determined by multiplying the maximum number of pounds of tobacco authorized to be grown on each allotted acre by the number of allotted acres. 7 U.S.C. § 1314c(a)(8) (1988).

on its past history of raising tobacco. 7 U.S.C. § 1313(b) (1988).[2] And, as we recently noted, "acreage allotments under the Agricultural Adjustment Act and the applicable regulations run with the land." *Bryant* v. *Peckinpaugh,* 241 Va. 172, 177, 400 S.E.2d 201, 204 (1991) (citations omitted).

If a quota is transferred, the "land in the farm from which the entire tobacco allotment or quota has been transferred shall not be eligible" for another allotment or quota for the five years following such transfer. 7 U.S.C. § 1314d(d) (1988). Any tobacco sold that is "in excess of the marketing quota for the farm on which the tobacco is produced . . . shall be subject to a penalty of 75 per centum of the average market price . . . for such kind of tobacco for the immediately preceding marketing year." 7 U.S.C. § 1314(a) (1988). As one court observed after describing a similar penalty for exceeding a federal rice marketing quota, "[b]ecause of the penalty provision, it is economically infeasible to grow rice without sufficient acreage allotment." *First Victoria Nat'l Bank* v. *United States,* 443 F.Supp. 865, 867 (S.D. Tex. 1978), *rev'd on other grounds,* 620 F.2d 1096 (5th Cir. 1980).

■ The statute and regulation permit tobacco quotas to be transferred if "the owner" of the covered farm signs the appropriate ASCS form. 7 C.F.R. § 723.216(a)(2)(iii)(B) (1990); *see* 7 U.S.C. § 1314b(g) (1988). However, neither the statute nor the regulation mentions remainder interests in farm properties subject to tobacco quotas. Nor do they contain definitions of the word "owner."

■ In the absence of further explanation, we assume that Congress and the Secretary of Agriculture intended to adopt for the word "owner" "its ordinary meaning, given the context in which it is used. 'Owner' is a word of general purport, but its primary meaning, as applied to land, is 'one who owns the fee and who has the right to dispose of the property.'" *Loyola Fed. Sav. & Loan Assoc.* v. *Herndon Lumber & Millwork, Inc.,* 218 Va. 803, 805, 241 S.E.2d 752, 753 (1978) (citations omitted). This construction is consistent with the well-established law in Virginia that a life tenant can transfer no more than his life interest. *E.g., Grubb* v. *Shirley,* 174 Va. 204, 210, 5 S.E.2d 475, 477 (1939); *Phillips* v. *Wells,* 147 Va. 1030, 1040, 133 S.E. 581, 584-85 (1926).

---

[2] A minimum marketing quota is allocated to qualifying farms upon which tobacco has not been raised in the preceding five years. 7 U.S.C § 1313(b) (1988).

However, Stith contends that because federal law controls this dispute, Jeffress is bound by the local ASCS office personnel's construction of the word "owner" in the regulation authorizing the sale of the tobacco quota. We do not agree for two reasons.

First, any construction of a statute or regulation that would make either unconstitutional should be avoided. *See Ocean View Improvement Corp.* v. *Norfolk & W. Ry.*, 205 Va. 949, 955, 140 S.E.2d 700, 704 (1965) (in construing ambiguous statute, Court should adopt constitutional rather than unconstitutional interpretation). And, a statute that authorized a life tenant to dispose of a remainderman's property interest in a tobacco quota would be unconstitutional as a violation of the Due Process Clauses of the Fifth Amendment to the Constitution of the United States, and Article One, Section 11 of the Constitution of Virginia. *See Mathews* v. *Eldridge*, 424 U.S. 319, 332 (1976) (Due Process Clause of Federal Constitution protects property interest of recipient of Social Security disability benefits); *School Bd. of the City of Norfolk* v. *United States Gypsum Co.*, 234 Va. 32, 38-39, 360 S.E.2d 325, 328 (1987) (Due Process Clause of Virginia Constitution protects property interest of tort-feasor under statute of repose); *Curtis* v. *Hiden*, 117 Va. 289, 298, 84 S.E. 664, 667 (1915) (if statute authorized court to order sale of entire estate, over vested *sui juris* remaindermen's protest, statute would violate Due Process Clause). Therefore, we construe the statute and regulation as requiring that all farm owners, including remaindermen, join in a sale of the entire tobacco quota.

Second, "[i]n most fields of activity [the Supreme Court] has refused to find federal pre-emption of state law in the absence of either a clear statutory prescription, or a direct conflict between federal and state law." *Boyle* v. *United Technologies, Inc.*, 487 U.S. 500, 504 (1988) (citations omitted). Stith's construction requires us to find that the federal statute and regulation preempt a long-standing principle of property law in Virginia. We find no such clear statutory prescription, nor do we see a direct conflict between the applicable federal statute and regulation and the law in Virginia. Instead, we think that Congress intended to defer to state property law in determining who could sell an entire tobacco quota. Accordingly, we conclude that a life tenant cannot sell a remainderman's interest in the quota.

Even so, Stith argues that the Jeffresses lost their remainder interest in the quota by failing to register that interest in the local

ASCS office and by Leola Jeffress' endorsements of the checks to her father. We find no merit in either contention.

■ The federal statute contains no provision for recording future interests in real property subject to tobacco quotas. The recordation of the deed from the Joneses to the Jeffresses in the Clerk's Office of the Circuit Court of Greensville County was sufficient to charge Stith with notice of the Jeffresses' interest therein. Code § 55-96; *Chavis* v. *Gibbs*, 198 Va. 379, 382, 94 S.E.2d 195, 197 (1956).

■ Nor is Jeffress bound by Leola Jeffress' accommodation endorsement of her father's check to enable him to cash it at her bank. Neither check noted that it was given in payment of the entire tobacco quota. Absent such notations, Leola Jeffress could have assumed that her father was selling only his life interest in the tobacco quota.

We hold that Stith acquired nothing more than Jones' life interest in the tobacco quota. Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*