532 S.E.2d 302

**Cecil D. JENKINS, Joan W. Jenkins, and Glenny E. Roberts, Appellants,**

**v.**

**William J. BROWN, Respondent.**

**No. 3177.**

Court of Appeals of South Carolina.

Heard May 9, 2000.

Decided May 30, 2000.

<hr>

558

Louis D. Nettles, of Nettles, McBride & Hoffmeyer, of Florence, for Appellants.

David B. Miller, of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, of Myrtle Beach, for Respondent.

ANDERSON, Judge:

Cecil D. Jenkins, Joan W. Jenkins and Glenny E. Roberts (collectively referred to as Appellants) sued William J. Brown

seeking a judgment entitling them to possession of a tobacco allotment and damages for trespass due to Brown's exercise of dominion and control over the allotment. The trial court granted Brown summary judgment holding the Appellants' claims were barred by the statute of limitations. The trial court ruled the sale of the allotment to Brown by the life estate tenant was a full and unrestricted sale of the allotment and was not subject to any rights of the remaindermen. We affirm as modified.

## FACTS/PROCEDURAL BACKGROUND

Juanita Winburn owned 180.4 acres of farmland in Horry County. On March 7, 1986, Winburn sold the property to her daughter and son, Joan Jenkins and James H. Winburn, reserving a life estate for herself. Cecil D. Jenkins later acquired James Winburn's interest in the property. Cecil and Joan Jenkins sold off various parcels of the property. In June, 1994, they sold the remaining 137 acres to Roberts.

In February of 1987, Juanita Winburn sold the tobacco allotment assigned to the property to Minnie L.B. Brown, with William Brown as the active producer. The transfer was properly documented by the United States Department of Agriculture's Agricultural Stabilization and Conservation Service (ASCS). Juanita Winburn did not place any restrictions or limitations on the conveyance. Moreover, the sales document contained no reservations of any type. Brown produced the tobacco crop on other properties.

Juanita Winburn died on October 18, 1990. The Appellants filed this action in November, 1997. Brown moved for summary judgment. In granting Brown's motion, the trial court held the Appellants' claims were contractual and applied the three year statute of limitations, S.C.Code Ann. § 15-3-530 (Supp.1999). In addition, the court ruled Juanita Winburn's sale of the allotment to Brown was a full and unrestricted transfer.

## ISSUES

I. Did the trial court err in granting summary judgment to Brown based on the statute of limitations?

II.   Did the trial court err in granting summary judgment to Brown, ruling the Agricultural Adjustment Act and applicable federal regulations specifically empower a life tenant to convey full unrestricted ownership to a tobacco allotment?

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Quality Towing, Inc. v. City of Myrtle Beach,* 340 S.C. 29, 530 S.E.2d 369 (2000);  Rule 56(c), SCRCP.  Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Carolina Alliance for Fair Employment v. South Carolina Dep't of Labor, Licensing and Regulation, et al.,* 337 S.C. 476, 523 S.E.2d 795 (Ct.App.1999). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Fleming v. Rose,* 338 S.C. 524, 526 S.E.2d 732 (2000).

In determining whether any triable issue of fact exists, as will preclude summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.,* 336 S.C. 53, 518 S.E.2d 301 (Ct.App.1999).  Nonetheless, a court cannot ignore facts unfavorable to that party and must determine whether a verdict for the party opposing the motion would be reasonably possible under the facts. *Bloom v. Ravoira,* 339 S.C. 417, 529 S.E.2d 710 (2000).

Summary judgment is a drastic remedy which should be cautiously invoked. *Carolina Alliance, supra.*  Nevertheless, in the rare case where a verdict is not reasonably possible under the facts presented, summary judgment is proper. *Bloom, supra.*

## LAW/ANALYSIS

### I.   Tobacco Allotment Program

The federal government, through the United States Department of Agriculture, administers a complex regulation of the

farming industry in our country, which includes the sale of tobacco. As part of this regulation, there has existed for many years a tobacco quota system, established pursuant to the Agricultural Adjustment Act of 1938, 7 U.S.C.A. § 1281, *et seq.* (1999). This national marketing quota system involves the assignment of tobacco allotments to individual farms in the tobacco-growing areas of the United States. *See* 7 U.S.C.A. §§ 1311–1316 (1999). The quota system once involved allotment by acres of tobacco grown, but currently individual farms are assigned a certain quota of pounds of tobacco which may be sold.

The tobacco allotment has become a basic feature of our nation's farm policy and, due to legislation authorizing transfer of allotments separate from the land, a valuable type of intangible property. After several decades of federal regulation of farming, tobacco allotments and the related marketing quotas are a kind of intangible property, increasingly separable from land. David Westfall, *Agricultural Allotments as Property*, 79 Harv. L.Rev. 1180 (1966).

Generally, flue-cured tobacco quotas are issued to a farm based on its past history of growing tobacco. 7 U.S.C.A. § 1313(b) (1999). Section 1314b(g)(1) provides in pertinent part:

> The Secretary [of Agriculture] shall permit the *owner* of any farm to which a Flue-cured tobacco allotment or quota is assigned to sell, for use on another farm in the same county, all or any part of such allotment or quota to any person who is or intends to become an active Flue-cured tobacco producer....

7 U.S.C.A. § 1314b(g)(1) (1999) (emphasis added).

## II. Statute of Limitations

■ The Appellants argue the trial court erred in holding the statute of limitations had run on their claim. They assert the allotment is an interest in land, and as such, the ten year statute of limitations applies to their claims. We agree.

■ The acreage allotment is made to the farm and not the person who owns or operates the farm and therefore runs

with the land. *Lee v. Berry*, 219 S.C. 346, 65 S.E.2d 257 (1951). *See also McClung v. Thompson*, 401 F.2d 253, 256 (8th Cir.1968)("Federal and state courts are in accord in holding that acreage allotments under the Agricultural Adjustment Act and the applicable regulations run with the land."); *Combustion Eng'g, Inc. v. Norris*, 246 Ga. 413, 271 S.E.2d 813 (1980)(quoting *McClung, supra*); *Cothran v. Evans*, 56 N.C.App. 431, 289 S.E.2d 398, 400 (1982)("Tobacco allotments do not belong to individuals, but run with the land."); *Jeffress v. Stith*, 241 Va. 313, 402 S.E.2d 14 (1991)(tobacco allotments run with the land). Although the allotments are not vested rights, they are interests in land that continue unless abolished by federal statute or regulation. We find the ten year statute of limitations applies to the Appellants' claims. *See* S.C.Code Ann. § 15–3–350 (1977).

▪ The statute of limitations does not begin to run against a remainderman until the death of the life tenant. *Stamper v. Avant*, 233 S.C. 359, 104 S.E.2d 565 (1958). Thus, the trial court erred in holding the Appellants' claims were time-barred.

Brown claims *Balkcom v. Cross*, 216 Ga. 530, 118 S.E.2d 185 (1961), governs in the present case. This assertion is meritless. We reject the holding in *Balkcom* in view of the historical precept that farm allotments run with the land.

### III. Transfer of Allotment by Life Tenant

▪ The Appellants profess the trial court erred in finding a life tenant could transfer the tobacco allotment to a third person. We disagree.

The Appellants rely on *Jeffress v. Stith*, 241 Va. 313, 402 S.E.2d 14 (1991), in support of their contention that life tenants may not convey an interest in the allotment greater than their interest in the underlying property. In *Jeffress*, the Supreme Court of Virginia addressed whether a life tenant was authorized to sell a farm's tobacco allotment and quota entitlement. The Virginia court noted the statute and regulations which permit an owner to transfer the tobacco quotas did not mention remainder interests in farm properties subject to tobacco quotas or define the word "owner." The *Jeffress* court concluded:

In the absence of further explanation, we assume that Congress and the Secretary of Agriculture intended to adopt for the word "owner" "its ordinary meaning, given the context in which it is used. 'Owner' is a word of general purport, but its primary meaning, as applied to land, is 'one who owns the fee and who has the right to dispose of the property.' " *Loyola Fed. Sav. & Loan Assoc. v. Herndon Lumber & Millwork, Inc.,* 218 Va. 803, 805, 241 S.E.2d 752, 753 (1978) (citations omitted). This construction is consistent with the well-established law in Virginia that a life tenant can transfer no more than his life interest.

*Jeffress,* 402 S.E.2d at 16.

The *Jeffress* decision is not controlling. Subsequent to the *Jeffress* opinion, the Secretary of Agriculture amended the regulations to define the word "owner." *See* 7 U.S.C.A. § 1314b(f) (1999)(Secretary of Agriculture shall prescribe such regulations as he considers necessary for carrying out the provisions of this section). The regulation as amended provides, "Owner means one who has legal ownership of farmland, including one: . . . (2) Who has a life-estate in the property." 7 CFR § 718.2 (1999).

Brown presented the affidavit of Riley Odum, an Agricultural Program Specialist with the ASCS. As part of his job duties, Odum interprets and implements statutes and regulations controlling the sale of tobacco allotments. Odum summarized the position of the ASCS as follows:

Tobacco acreage allotments are not real property but are Federal statutory entitlements. The sale of such an allotment is not governed by real property principles or by State law. Under current regulations which are used to implement these statutory provisions, we have concluded that only the approval of just the life tenant is necessary to effectuate the sale of a tobacco acreage allotment. The proposed rule issued on March 14, 1991 was meant to merely reflect in the regulations our current position on this matter; it was not the intent of the proposed rule that our existing interpretation be changed.

The Secretary's amendment defining the word owner clarified the law. The amendment did not alter substantive rights under the tobacco program. According to federal law, Juanita

Winburn had the right as a life tenant to transfer the full and unrestricted interest to the tobacco allotment to Brown, forever severing the allotment from the underlying real property.

The efficacy of 7 C.F.R. § 718.2 imprecates a denegation of real estate doctrines involving fee simple ownership as juxtaposed to a life estate interest. Facially, § 718.2 ignores basic precepts of common law property principles. The regulation is anathema to property law extant in this country. Further, the regulation flies in the face of long-standing property law rules in South Carolina. *See Belue v. Fetner,* 251 S.C. 600, 164 S.E.2d 753 (1968)(holding life tenant could convey no more than his life estate).

The Appellants maintain the regulation that should govern in the instant case is 7 CFR § 719.2(q) (1986), the regulation in effect at the time of the transfer of the remainder interest to them. The 1986 regulation provided an owner is "[a] person who has legal ownership of farmland, including a person who is buying farmland under a purchase agreement." Appellants contend the word "owner" should be given its plain and ordinary meaning-one who owns the fee and has the right to dispose of the property. According to the Appellants, at the time of the transfer, Juanita Winburn, the life tenant, did not have the authority to transfer their remainder interest in the tobacco allotment; thus, to allow a subsequently modified regulation to retroactively divest the Appellants of their interest in the allotment would not meet the minimum dictates of due process.

Although appealing, the argument posited by the Appellants is not persuasive. Pursuant to 7 U.S.C.A. § 1313(d), "[f]arm marketing quotas may be transferred only in such manner and subject to such conditions as the Secretary may prescribe by regulations." *See Hart v. Hassell,* 250 F.Supp. 893 (E.D.N.C.1966)(provision of § 1313 that farm marketing quotas may be transferred only in accordance with regulations as may be prescribed by Secretary of Agriculture is valid and in furtherance of congressional intent to regulate interstate commerce and, accordingly, state law is not determinative as to transferability of tobacco allotments). Congress, through § 1313(d), empowered the Secretary of Agriculture, through 7 CFR § 718.2 (1999), to control and direct the transfer of "[f]arm marketing quotas" in every aspect.

The tobacco allotment program is a creation of the federal government, which has absolute authority in prescribing the methodology in which the allotments may be transferred. Concomitantly, we are mandated to accept the federal government's decision that a life tenant has the right to sell the tobacco allotment. The trial court did not err in granting Brown summary judgment on this issue.

## CONCLUSION

We find the trial court erred in applying the three year statute of limitations and determining the Appellants' claims were time-barred. The ten year statute of limitations is applicable in this case. Furthermore, we hold 7 C.F.R. § 718.2 issued by the Secretary of Agriculture is controlling in regard to the "Flue cured tobacco allotment or quota" involved in the case *sub judice* . We rule § 718.2 permits the transfer of the "Flue cured tobacco allotment or quota" to a third person without the acquiescence or consent of the fee simple remainder interest in the farm property. We are cognizant our ruling contravenes long-established precedent in the property law arena in this state but nonetheless come to the ineluctable conclusion that we must accede to this federal governmental regulation. The trial court properly granted summary judgment to Brown. Accordingly, the judgment of the Circuit Court is

**AFFIRMED AS MODIFIED.**

HEARN, C.J., and HUFF, J., concur.