Present:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Russell, S.J.

STEPHEN KOPALCHICK                          OPINION BY
                                  SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 061368                       June 8, 2007

CATHOLIC DIOCESE OF RICHMOND

             FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Walter W. Stout, III, Judge

     This appeal requires us to construe Code § 8.01-249(6),

which governs the accrual date of the statute of limitations

for personal injury resulting from sexual abuse that occurred

during the infancy or incapacity of the victim.  Specifically,

the question before us is whether the statutory change in the

accrual date affects the rights of a defendant that is not a

"natural person."

                          Facts and Proceedings

     Stephen Kopalchick brought an action to recover damages

for personal injury against six defendants, including "The

Catholic Diocese of Richmond, a religious corporation."[1]  His

motion for judgment asserted that he had been sexually abused

from 1962 to 1966, when he was between the ages of 10 and 14

years, by two priests employed and governed by the defendant

diocese.  He alleged that he had not been aware, until 2002,

that the severe mental, emotional and physical injuries from

_____

     [1] The motion for judgment alternatively describes the
diocese as a "religious association."

which he suffered were the result of the sexual abuse committed upon him by the priests in the 1960's.  His claim for damages against the diocese was based upon theories of respondeat superior, negligence, breach of fiduciary duty, and "negligent misrepresentation."

The diocese filed a plea in bar of the statute of limitations.  The circuit court sustained the plea and dismissed the case with prejudice.[2]  We awarded the plaintiff an appeal.

## Analysis

### A.  Background

The long-standing statute of limitations for personal injury in Virginia has been the two-year period now set forth in Code § 8.01-243(A).  In general, the limitation period begins to run when the right of action accrues, which is "the date the injury is sustained in the case of injury to the person . . . and not when the resulting damage is discovered."  Code § 8.01-230.  A person who is an infant at the time the cause of action accrued can sue upon it "within the prescribed

---

[2] The court's order dismissed the case as to all six defendants.  Four of the original defendants were never served with process.  The fifth original defendant, the bishop of the diocese, was served but later retired.  The current bishop of the diocese became a party by substitution for his predecessor in office.  The plaintiff appeals only the dismissal of the diocese, not the other five defendants.

2

limitation period after such disability is removed." Code

§ 8.01-229(A)(1). Thus, prior to 1991, a plaintiff who was

injured by sexual abuse while a child could bring an action up

until his twentieth birthday, but not thereafter.

B. The 1991 Amendment

The General Assembly, by 1991 Acts, ch. 674, effective

July 1, 1991, enacted the following provisions:

> In actions for injury to the person, whatever
> the theory of recovery, resulting from sexual abuse
> occurring during the infancy or incompetency of the
> person, [the cause of action shall be deemed to
> accrue] when the fact of the injury and its causal
> connection to the sexual abuse is first communicated
> to the person by a licensed physician, psychologist,
> or clinical psychologist. However, no such action
> may be brought more than ten years after the later
> of (i) the last act by the same perpetrator which
> was part of a common scheme or plan of abuse or (ii)
> removal of the disability of infancy or
> incompetency.

> . . . .

> [T]he provisions of subdivision 6 of § 8.01-249
> shall apply to all actions filed on or after July 1,
> 1991, without regard to when the act upon which the
> claim is based occurred provided that no such claim
> which accrued prior to July 1, 1991, shall be barred
> by application of those provisions if it is filed
> within one year of the effective date of this act.

In Starnes v. Cayouette, 244 Va. 202, 419 S.E.2d 669

(1992), we held both the foregoing provisions to be

unconstitutional because they violated the due process

guarantees of Article I, § 11 of the Constitution of Virginia.

Id., at 212, 419 S.E.2d at 675. We reached that conclusion in

3

the light of a series of our decisions dating back to 1876 in which we had held that the legislature could not, by retroactive enactments, interfere with either vested or substantive rights.  In Starnes, we concluded that the right to interpose the defense of the statute of limitations was a substantive property right, constitutionally protected from infringement by retroactive legislation.  Id. at 209, 419 S.E.2d at 673.

C.  The Constitutional Amendment

In the wake of Starnes, the General Assembly in the next two successive years, Acts 1993, ch. 892 and Acts 1994, chs. 405 and 818, approved and submitted to a vote of the people the following proposed constitutional amendment:

> The General Assembly's power to define the accrual date for a civil action based on an intentional tort committed by a natural person against a person who, at the time of the intentional tort, was a minor shall include the power to provide for the retroactive application of a change in the accrual date.  No natural person shall have a constitutionally protected property right to bar a cause of action based on intentional torts as described herein on the ground that a change in the accrual date for the action has been applied retroactively or that a statute of limitations or statute of repose has expired.

The amendment was ratified by a vote of the people at the general election of November 8, 1994 and became effective January 1, 1995.  It now appears as the fourth paragraph of Article IV, § 14 of the Constitution of Virginia.

## D. The Present Statute

Pursuant to the constitutional amendment, the General Assembly amended and reenacted Code § 8.01-249(6) in 1995, in 1996, and again in 1997. Pursuant to 1997 Acts, chs. 565 and 801, Code § 8.01-249(6) was cast in its present form effective on January 1, 1998. It now provides in pertinent part:

> [The cause of action shall be deemed to accrue in actions] for injury to the person, whatever the theory of recovery, resulting from sexual abuse occurring during the infancy or incapacity of the person, upon removal of the disability of infancy or incapacity as provided in § 8.01-229 or, if the fact of the injury and its causal connection to the sexual abuse is not then known, when the fact of the injury and its causal connection to the sexual abuse is first communicated to the person by a licensed physician, psychologist or clinical psychologist.

The plaintiff argues that a plain reading of this section leads to the inevitable conclusion that the circuit court erred in sustaining the plea in bar. He argues that the priests sexually abused him while he was under the disability of infancy, that although he was injured then, he suppressed knowledge of the injury and did not become aware of the fact of his injury or of the causal connection between the sexual abuse and the injury until informed of them by a psychologist in 2002. His cause of action then accrued, and the limitation period only then began to run. He brought this action in 2003, and contends that it was therefore timely.

The diocese argues that the statute can only be construed in light of the constitutional enabling provision under which it was adopted. That amendment to the Constitution, quoted above, read as a whole, restricts its application to "natural persons." Therefore, the diocese argues, Code § 8.01-249(6) must be read as applying only to "natural persons," a category to which the diocese does not belong. Thus, the argument concludes, in the case of a defendant that is not a "natural person," the former state of the law remains in effect, and a plaintiff's right of action is barred on his 20th birthday. The plaintiff in the present case passed that date more than 30 years before filing this action.

A "natural person" has been defined as "a human being, as opposed to an artificial or juristic entity." Shawmut Bank, N.A. v. Valley Farms, 610 A.2d 652, 655 (Conn. 1992); "a human being, as distinguished from an artificial person created by law." Industry to Industry, Inc. v. Hillsman Modular Molding, Inc., 633 N.W.2d 245, 249 (Wis. App. 2001). The term "diocese" refers to a

territorial subdivision,[3] now defined as "the territorial unit of [a] church, governed by a bishop."  Black's Law Dictionary 490 (8th ed. 2004).  In oral argument, counsel for the diocese referred to it as an "ecclesiastical construct."  Plaintiff's counsel did not contend that it was a "natural person," but characterized it as an "association of natural persons."  We hold that the diocese is not a "natural person" as the term is used in the constitutional amendment.

The purpose of the constitutional amendment is clear:  To empower the General Assembly to make a retroactive change in the accrual date of the right of action for childhood sexual abuse, extending it from the date the injury was sustained to the date the injured person was made aware by a licensed professional of the fact of the injury and that the childhood sexual abuse was its cause.  Under our holding in Starnes, that was a power the General Assembly lacked before the effective date of the constitutional amendment.  As with any grant of power made by the people to their government, the people have the right to limit or circumscribe the grant

---

[3] Derived from the Latin dioecesis, "an administrative division of a country."  Webster's Third New International Dictionary 636 (1993).

as they may see fit.  In this case, the people of Virginia limited the grant in two ways: the circumstances to which it was to apply and the type of defendant who would be affected.  First, the people expressly limited the ambit of the constitutional amendment to "an intentional tort committed by a natural person."  Then, in contemplation of the constitutional protection given by Starnes to a defendant's right to interpose the bar of the statute of limitations in such cases, the people went further and removed the defendant's "constitutionally protected property right to bar a cause of action based on intentional torts as described herein on the ground that a change in the accrual date for the action has been applied retroactively or that a statute of limitations or statute of repose has expired."  Significantly, the people expressly limited the legislative power to remove that constitutional right, restricting application of the power to defendants who are natural persons.

> The office and purpose of the constitution is to shape and fix the limits of governmental activity.  It thus proclaims, safeguards and preserves in basic form the pre-existing laws, rights, *mores,* habits and modes of thought and life of the people as developed under the common law and as existing at the time of its adoption to the extent and as therein stated.

> Its interpretation and construction are to be made with recognition of the fact that it is based

8

upon and announces the fundamental theory and principles of sovereignty and government as developed under the common law.

The constitution must be viewed and construed as a whole, and every section, phrase and word given effect and harmonized if possible.

. . . .

The purpose and object sought to be attained by the framers of the constitution is to be looked for, and the will and intent of the people who ratified it is to be made effective.

Dean v. Paolicelli, 194 Va. 219, 226, 72 S.E.2d 506, 510-11 (1952) (internal citations omitted).

Applying those principles, we are of opinion that the intent of the framers of the constitutional amendment, and of the people ratifying it, was to empower the General Assembly to remove the constitutionally protected right of a defendant to bar a cause of action on the grounds stated in the amendment only in cases where the defendant is a "natural person." With respect to a defendant that is not a "natural person," the pre-existing state of the law, as interpreted in Starnes, continues in effect.

In construing a statute, it is the duty of the courts so to construe its language as to avoid a conflict with the constitution. Jeffress v. Stith, 241 Va. 313, 317, 402 S.E.2d 14, 16 (1991). We attribute to the legislature the intent to enact laws that conform to the constitution in all respects.

9

Applying that principle, we construe Code § 8.01-249(6) to apply only to a defendant who is a "natural person," as authorized by the constitutional amendment.

## Conclusion

Because the diocese is not a "natural person," Code § 8.01-249(6) has no effect upon its constitutionally protected right to rely on the bar of the statute of limitations. We find no error in the decision of the circuit court and will therefore affirm its judgment.

<u>Affirmed</u>.

10